[Cite as *State v. Reives-Bey*, 2011-Ohio-1778.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C. A. No.   25138 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TREVELL JULLIAN REIVES-BEY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.   CR 09 08 2572 |

DECISION AND JOURNAL ENTRY

Dated: April 13, 2011

MOORE, Judge.

{¶1}    Appellant, Trevell Reives-Bey, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms in part, reverses in part, and remands the matter to the trial court for further proceedings.

I.

{¶2}    On the evening of August 16, 2009, Federico Jimnez was drinking at a bar called Fiesta in Akron, Ohio.  He had met some women and consumed a number of drinks, including liquor and beer.  Shortly after he called his brother-in-law, Guersom Rodaz, for a ride home, the women convinced him to visit another bar with them.  When Rodaz arrived, he followed Jimnez and the women to a bar called Karam's Lounge, also in Akron, Ohio.  While waiting for Jimnez to wind down his night, Rodaz drank two beers.  Around midnight, Rodaz convinced Jimnez that it was time to leave.  They exited the bar and got into Rodaz's minivan.

{¶3} As they began to drive, two men approached and Jimnez told Rodaz to stop. Jimnez had met the men in the bathroom at Karam's and bought each of them a beer at the bar. The men requested a ride home and Rodaz agreed to accommodate them. The men were unable to provide specific directions, but eventually directed Rodaz to drive to the apartment building located at 286 West Miller. After arriving at the address, each of Jimnez's acquaintances threw their beer bottles, smashing them on the ground. The men convinced Jimnez and Rodaz to follow them to the back of the building. Behind the building, the men each pulled a gun on Jimnez and Rodaz and robbed them. The men took their wallets, cell phones, car keys, pants, and boots. The men then drove off in Rodaz's minivan.

{¶4} Rodaz and Jimnez sought help from residents of the area and eventually borrowed a phone to call 911. Officer Michael Stanar and his partner, Officer Robert McClish, arrived prior to the end of the phone call and began investigating the robbery. They radioed for other officers in the area to look for a red Dodge Caravan. Jimnez, who spoke very little English, communicated through Rodaz. The two described the perpetrators as black males, one of whom was wearing a white t-shirt, black pants and a red baseball cap. The second perpetrator was described as wearing a black t-shirt and black pants.

{¶5} At 2:18 a.m., approximately 20 minutes after the 911 call, Officer Justin Winebrenner and his partner, Michael Murphy, observed a van matching the radioed description and turned to follow it. The van immediately drove up on the curb, causing the officers to initiate a traffic stop. The driver of the van sped up and fled. When the officers radioed the van's license plates, they came back registered to Rodaz. The officers pursued the van, which traveled into the grass, twice attempting and finally succeeding to smash through a fence. The van traveled high up on an embankment before crashing back through the fence and re-entering

the roadway. The van used an exit ramp from I-76 to enter the highway and traveled west in the eastbound lanes of I-76, followed by the police car with flashing lights and sirens. Traffic traveling in the correct direction had to swerve to avoid the van, which at times reached 60 miles per hour. At one point, the officers had to stop their cruiser to avoid a collision with a citizen's vehicle. The van eventually exited the highway, traveled on side streets and crashed into a pole. The officers were able to pin the van to the pole with their cruiser. The van's lone occupant, Reives-Bey, then fled on foot. After a brief chase through backyards, the officers apprehended him. A search of the van did not reveal any guns, Rodaz's Blackberry cell phone, or the amount of money taken from Jimnez and Rodaz. Reives-Bey did, however, have Jimnez's cell phone and one sock. Reives-Bey was taken into custody.

{¶6} Two officers transported Jimnez and Rodaz to the minivan. They arrived at the scene of Reives-Bey's arrest within 50 minutes of the 911 call. At the time of their arrival, Reives-Bey was already in a police transport van. The officers then conducted a "show-up" in which they maneuvered their cruiser perpendicular to the broad-side of the transport van and illuminated the side of the van with the cruiser's headlights and a takedown light. Officers then brought Reives-Bey out to the illuminated area where both Jimnez and Rodaz identified him as one of the perpetrators. Reives-Bey was wearing all black clothing.

{¶7} On August 28, 2009, the Summit County Grand Jury indicted Reives-Bey on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), both felonies of the first degree, two counts of kidnapping in violation of R.C. 2905.01(B)(2), both felonies of the first degree, firearm specifications to each count of aggravated robbery and kidnapping in violation of R.C. 2941.145, one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), a felony of the third degree, and one count of grand theft in

violation of R.C. 2913.02(A), a felony of the fourth degree. Beginning November 5, 2009, the charges were tried to a jury. On November 9, 2009, the jury found Reives-Bey guilty of failure to comply with the order or signal of a police officer and grand theft. The jury was unable to reach a verdict on the remaining counts. On November 17, 2009, the day of sentencing, the State amended count one of the indictment to the lesser-included offense of robbery and Reives-Bey pleaded guilty to that count. The State dismissed the remaining counts, including all firearm specifications.

{¶8} Reives-Bey timely filed a notice of appeal. He raises six assignments of error for our review. We have consolidated some assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED BY ADMITTING THE PROFERRED IDENTIFICATION EVIDENCE."

{¶9} In his first assignment of error, Reives-Bey contends that the trial court committed plain error by admitting evidence of the victims' pre-trial and courtroom identification of him. We do not agree.

{¶10} "A challenge to the admissibility of identification testimony on the basis that it was illegally obtained must be raised before trial in a motion to suppress." *State v. Keenan*, 9th Dist. No. 08CA009368, 2008-Ohio-5529, at ¶6, citing Crim.R. 12(C)(3). Reives-Bey "did not file a motion to suppress and could not raise the admissibility of the identification testimony during trial." Id. at ¶6. Even if we treat Reives-Bey's failure to file a motion to suppress as mere forfeiture of the issue rather than waiver, as stated in Crim.R. 12(H), he is limited to arguing plain error. See *State v. Gray*, 9th Dist. No. 08CA0057, 2009-Ohio-3165, at ¶7 (limiting the discussion of a forfeited evidentiary issue to plain error).

{¶11} Pursuant to Crim.R. 52(B), a plain error or defect that affects a substantial right may be noticed although it was not brought to the attention of the trial court. "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." *State v. Kobelka* (Nov. 7, 2001), 9th Dist. No. 01CA007808, at *2, citing *State v. Tichon* (1995), 102 Ohio App.3d 758, 767. As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has "established that the outcome of the trial clearly would have been different but for the alleged error." *Kobelka*, 9th Dist. No. 01CA007808, at *2, citing *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, and *State v. Phillips* (1995), 74 Ohio St.3d 72, 83.

{¶12} Although charged with six offenses, including two counts of aggravated robbery, two counts of kidnapping, a firearm specification to each of the aggravated robbery and kidnapping charges, failure to comply with the order or signal of a police officer and grand theft, the jury only found him guilty of failure to comply with the order or signal of a police officer and grand theft. Because the police observed him in the act of failing to comply, only the grand theft charge, which stemmed from Reives-Bey's use of Rodaz's minivan, could have potentially involved the identification testimony of which he complains.

{¶13} First, Reives-Bey contends that the admission of Jimnez and Rodaz's in-court and out-of-court identification testimony violated his due process rights because they were based on an impermissibly suggestive show-up that gave "rise to a very substantial likelihood of irreparable misidentification," citing *Simmons v. United States* (1968), 390 U.S. 377, 384. He argues that the admission of this evidence constituted plain error. However, even if an identification procedure is suggestive, it is admissible so long as the challenged identification

itself is reliable. *Manson v. Brathwaite* (1977), 432 U.S. 98. When considering the reliability of witness identifications, the court should evaluate the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the level of certainty demonstrated by the witness at the identification procedure, and the length of time between the crime and the identification." *State v. Scott* (Mar. 30, 1982), 10th Dist. No. 81AP-899, at *1, citing *Neil v. Biggers* (1972), 409 U.S. 188. The focus of this approach "is the reliability of the identification, *not* the identification procedures." (Emphasis sic.) *State v. Jells* (1990), 53 Ohio St.3d 22, 27. The circumstances surrounding Rodaz and Jimnez's identification demonstrate reliability. In this case, Rodaz testified that although the scene of the robbery was dark, he was able to clearly see the men who committed the robbery when they entered his van because the interior light illuminated their faces. Testimony further indicated that both Rodaz and Jimnez identified Reives-Bey at the scene of his arrest without hesitation. Reives-Bey was wearing all black clothing, just as Jimnez and Rodaz described. He was, however, wearing basketball shorts rather than pants. Neither the State nor Reives-Bey introduced testimony as to the length of the basketball shorts. Also, Jimnez described the pants as worn low on the hips. There was some discrepancy between the description Rodaz and Jimnez gave of their assailant's hair. They described it as long. An officer described Reives-Bey's hair as a "medium afro, not real high[.]" Finally, the officers testified that they transported Jimnez and Rodaz to the scene of Reives-Bey's arrest within 30-45 minutes of the 911 call. Testimony indicated that the first officers arrived at the scene of the robbery during the 911 call. On cross-examination, Officer McClish acknowledged that it could have been as long as 50 minutes between his arrival at the robbery scene and the arrival of Rodaz and Jimnez at the scene of Reives-Bey's arrest. See *State v. Walker*, 10th Dist. No. 02AP-679, 2003-Ohio-986, at ¶17

(identification 45 minutes to one hour after crime); *State v. Henton* (Aug. 30, 1996), 11th Dist. No. 95-A-0056, at *5 (rape victim identified attacker in show-up four hours after crime). Although there was some discrepancy in the descriptions provided by police officers and the victims, questionable areas in the testimony were proper for the jury to resolve. *State v. Moody* (1978), 55 Ohio St.2d 64, 69. Considering these circumstances, we do not agree that the trial court committed plain error in admitting Jimnez and Rodaz's testimony with regard to Reives-Bey's identification.

**{¶14}** Reives-Bey further contends that the trial court erred in admitting hearsay testimony from police officers regarding Rodaz and Jimnez's identification of Reives-Bey at the show-up in violation of Evid.R. 801(D)(1)(c). If admitting this evidence constituted error, any error was harmless. Crim.R. 52(A). As we determined above, the trial court did not commit plain error by admitting the testimony of Rodaz and Jimnez regarding the show-up identification of Reives-Bey. Accordingly, the error, if any, in admitting this evidence was harmless. Reives-Bey's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"MR. REIVES-BEY'S TRIAL COURT COUNSEL WAS INEFFECTIVE FOR NOT MAKING A PRETRIAL MOTION TO EXCLUDE IDENTIFICATION EVIDENCE."

**{¶15}** In his second assignment of error, Reives-Bey contends that he was deprived of effective assistance of counsel because his trial counsel did not file a pretrial motion to exclude identification evidence. We do not agree.

**{¶16}** In order to show ineffective assistance of counsel, Reives-Bey must satisfy a two-prong test. *Strickland v. Washington* (1984), 466 U.S. 668, 669. First, he must show that his trial counsel engaged in a "'substantial violation of any * * * essential duties to his client.'"

*State v. Bradley* (1989), 42 Ohio St.3d 136, 141, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396. Second, he must show that his trial counsel's ineffectiveness resulted in prejudice. *Bradley*, 42 Ohio St.3d at 141-142, quoting *Lytle*, 48 Ohio St.2d at 396-397. "Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel." *State v. Velez*, 9th Dist. No. 06CA008997, 2007-Ohio-5122, at ¶37, citing *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus. This Court need not address both *Strickland* prongs if Reives-Bey fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶10.

{¶17} Reives-Bey is unable to demonstrate prejudice from the failure of his counsel to file a motion to suppress the identification evidence. Reives-Bey's discussion of his second assignment of error is similarly bereft of authority indicating that a motion to suppress would have been successful. App.R. 16(A)(7). As noted above, the jury did not find Reives-Bey guilty of the most serious charges, all of which were first-degree felonies, and their accompanying firearm specifications. The only charge subject to the identification evidence was the grand theft charge.

{¶18} Any suggestion that the trial court would have suppressed the identification testimony after a hearing is entirely speculative. In reviewing a motion to suppress the identification testimony, the trial court would be required to apply the same *Neil* factors as discussed in the previous assignment of error. *Scott*, 10th Dist. No. 81AP-899, at *1. Reives-Bey has failed to demonstrate that a motion to suppress would have been successful. Thus, he cannot demonstrate that the outcome of the trial itself would have been different had trial counsel filed a motion to suppress. *Velez*, at ¶37. Reives-Bey's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

"THE TRIAL COURT ERRED BY DENYING MR. REIVES-BEY'S MOTION TO DISMISS PURSUANT TO CRIMINAL RULE 29."

**ASSIGNMENT OF ERROR IV**

"MR[.] REIVES-BEY'S CONVICTION ON COUNT SIX, GRAND THEFT, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶19} Because Reives-Bey's third and fourth assignments are related, we consider them together. In his third and fourth assignments of error, Reives-Bey contends that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29 and that his conviction for grand theft was against the manifest weight of the evidence. In the argument portion of his third assignment of error, Reives-Bey contends not that the evidence was insufficient when viewed in the light most favorable to the State, but rather that the victims' identification of Reives-Bey was unreliable for a variety of reasons. He also argues that the trial court should have granted his motion for acquittal on the aggravated robbery, kidnapping and grand theft charges. Of these charges, the jury found him guilty only of grand theft. Accordingly, we review both assignments together as a challenge to the manifest weight of the evidence with regard only to Reives-Bey's conviction for grand theft.

{¶20} A determination of whether a conviction is against the manifest weight of the evidence does not permit this court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.

{¶21} Reives-Bey contends that the identification evidence offered against him is unreliable because 1) he was identified under suggestive circumstances, 2) Jimnez had been drinking heavily, 3) Rodaz only saw the perpetrators as they entered the van, 4) as they exited the van and walked behind the apartment at West Miller one perpetrator walked in front of and the other walked behind both of the victims, 5) the perpetrators forced Jimnez and Rodaz to lie down face-first while they were being robbed and the area where the robbery took place was fairly dark. He further contends that the jury should have believed his testimony.

{¶22} Reives-Bey testified that he was walking to his girlfriend's house when two men matching the descriptions given by the victims pulled up beside him in Rodaz's minivan and asked him if he wanted to rent the minivan. He negotiated the price down to $25 because he only had $30 and he still wanted to buy some marijuana. The rental was to last two hours. He then noticed Jimnez's cell phone and decided to call his girlfriend. While he was driving, he saw a police car behind him and became paranoid. Due to his nervousness he bumped the corner while turning. The officers illuminated their lights and Reives-Bey attempted to flee. After leading the police on a chase, he crashed the minivan and fled on foot. He was arrested. He testified that he thought he was being arrested for trying to escape from the police and "having the stolen car, probably." Defense counsel attempted to have him clarify the statement, but he further stated that "'cause the type of people it was, they not -- they not about to handle a minivan." He also testified that those who rented cars out would often call the police and report a vehicle stolen if they felt that a renter kept the car too long. His flight from the police is

admissible evidence of a "'consciousness of guilt.'" *State v. Brady*, 9th Dist. No. 22034, 2005-Ohio-593, at ¶9, quoting *State v. Taylor* (1997), 78 Ohio St.3d 15, 27.

{¶23} While he admitted that he fled from the police, Reives-Bey notes that he was found only with Jimnez's cell phone and not with any guns or the other items taken in the robbery. Reives-Bey further notes that he was found in black shorts, rather than black pants, and his hair was described at trial as medium-length instead of long. Rachel Kopec testified on behalf of Reives-Bey that his belongings from jail, which included the clothes he wore the night of his arrest, consisted of a black t-shirt and black shorts. The defense did not move to admit the shorts into evidence. Finally, Rieves-Bey points out that some testimony indicated he was not under the influence of drugs or alcohol at the time of arrest, while other testimony indicated that the perpetrators consumed alcohol. Essentially, Reives-Bey contends that the jury should have believed his explanation of events, that he rented the van from the perpetrators and used the cell phone that they left behind.

{¶24} Reives-Bey was identified under circumstances whereby the police brought Jimnez and Rodaz to scene where he crashed Rodaz's van and was arrested. He was in custody at the time. Testimony indicated, however, that the victims' identification took place within 50 minutes of the robbery. Additionally, although Jimnez had consumed several alcoholic beverages, Rodaz was not intoxicated. In fact, Lieutenant Phister stated that Rodaz was in acceptable condition to drive. As to the ability of the victims to observe Reives-Bey, Rodaz testified that he observed Reives-Bey in a well-lit area when he entered the van in the parking lot of Karam's Lounge because the van's interior light illuminated the interior of the vehicle when the door opened. The victims both testified that one perpetrator wore black pants and a black t-shirt and another wore black pants, a white t-shirt and a red baseball cap.

{¶25} While Reives-Bey admitted to making phone calls on Jimnez's cell phone, he was not arrested in possession of any guns, Rodaz's BlackBerry phone, money approaching the value of that taken in the robbery or the victims' clothes, other than a sock. A photograph of Reives-Bey on the night of his arrest demonstrates medium-length hair, which an officer described as a "medium afro, not real high * * * [h]is hair wasn't short by any means." Jimnez described his hair as long and "sort of messed up." Rodaz described his hair as "really long." At trial, Jimnez was unable to identify a small black and white photo of Reives-Bey as one of the perpetrators despite identifying a larger color version of the same photo during the State's case-in-chief.

{¶26} Given the discrepancies in the testimony, it was not unreasonable for the jury to believe that Reives-Bey committed grand theft with regard to the minivan despite the fact that the they could not agree that the State proved the aggravated robbery and kidnapping charges beyond a reasonable doubt. Defense counsel elicited testimony on cross-examination from the various witnesses that brought out potential weaknesses in the identification of Reives-Bey. The jury, as factfinder, apparently was satisfied with the State's evidence with regard to the grand theft charge but remained unconvinced with regard to the charges for aggravated robbery and kidnapping, which it had the right to do. See *State v. McClure*, 9th Dist. No. 25070, 2010-Ohio-3002, at ¶19. Accordingly, upon review of the record, we do not conclude that "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Reives-Bey's third and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR V

"MR. REIVES-BEY WAS UNLAWFULLY SENTENCE[D] UPON TWO ALLIED OFFENSES OF SIMILAR IMPORT."

**{¶27}** In his fifth assignment of error, Reives-Bey contends that the trial court committed plain error when it unlawfully sentenced him on two allied offenses of similar import. We reverse and remand to the trial court for further proceedings consistent with this opinion.

**{¶28}** The Supreme Court of Ohio has held that the failure to properly merge convictions on allied offenses of similar import constitutes plain error because even when sentences are run concurrently, "a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, at ¶31. Here, Reives-Bey was potentially prejudiced not just by multiple convictions but also consecutive sentences.

**{¶29}** In its initial brief[1], the State concedes, and we agree, that robbery and theft constitute allied offenses of similar import. *State v. Johnson* (1983), 6 Ohio St.3d 420, 423, overruled on other grounds by *Ohio v. Johnson* (1984), 467 U.S. 493. The State requests that we remand this matter to the trial court for a determination of whether the offenses were committed separately or with a separate animus, pursuant to *State v. Bigelow*, 9th Dist. No. 08CA0072-M, 2009-Ohio-4093, at ¶11. Reives-Bey requests that we vacate his sentences for robbery and grand theft with instructions to the trial court that it must sentence him on one of the offenses.

**{¶30}** The Ohio Supreme Court recently decided *State v. Johnson*, Slip Opinion No. 2010-Ohio-6314. *Johnson* involved a defendant who was charged with child endangering as well as felony murder with respect to the death of a seven-year-old boy. On direct appeal, the First District Court of Appeals ruled that the trial court should have merged the felony murder

---

[1] In light of the Supreme Court's recent decision in *State v. Johnson*, decided December 29, 2010, we ordered the parties to submit supplemental briefs addressing *Johnson's* effect, if any, on this matter.

conviction and the child-endangering conviction under R.C. 2941.25 as allied offenses. The Fifth District in *State v. Mills*, 5th Dist. No. 2007 AP 07 0039, 2009-Ohio-1849, reached the opposite result. The Ohio Supreme Court certified the conflict, and concluded that, in determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. In reaching this conclusion, the court overruled its previous precedent in *State v. Rance* (1999), 85 Ohio St.3d 632, to the extent that *Rance* required a comparison of the offenses in the abstract. *Johnson* at ¶44.

{¶31} Although *Johnson* does not set forth a test supported by a four-justice majority, all of the justices agree that the conduct of the accused must be examined. Id. at the syllabus. Examining the defendant's conduct allows a court to determine whether it is possible to commit both offenses by the same conduct. Id. at ¶48. If both offenses can be committed by the same conduct, then a court must determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49, quoting *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶50. We believe this approach is consistent with Chief Justice Brown's opinion, joined by Justices Pfeiffer and Lundberg Stratton, and Justice O'Donnell's concurrence in which Justice Lundberg Stratton also joined.

{¶32} The decision in *Johnson* does not appear under the circumstances of Reives-Bey's conduct to alter the outcome in this case. This is so because the issue in this case is not whether, in applying *Johnson* and examining Reives-Bey's conduct, robbery and grand theft can be committed by the same conduct, they can. To commit both offenses by the same conduct, a defendant need only successfully commit a robbery in which the goods stolen are of a certain

type, such as a motor vehicle, or are valued at $5,000 or more but less than $100,000. R.C. 2913.02(B). Instead, the issue under the particular facts of this case is whether, under R.C. 2941.25(B), Reives-Bey committed the robbery of Rodaz and Guersom separately or with a separate animus. See *State v. Reyna* (1985), 24 Ohio App.3d 79, 82 (a defendant completed burglary and robbery offenses when he left the victim's home; he then proceeded to enter the garage and steal the victim's vehicle, thus completing a separate offense).

{¶33} Contrary to Reives-Bey's request, we must remand the matter to the trial court for a determination as to whether he committed robbery and grand theft separately or with a separate animus. *Johnson* at ¶49-50. If the trial court determines that the crimes were committed separately or with a separate animus, Reives-Bey may be convicted of each. *Brown* at ¶17. Accordingly, we reverse and remand this matter to the trial court for a determination as to whether Reives-Bey committed the offenses separately or with a separate animus.

**ASSIGNMENT OF ERROR VI**

"THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING THE MAXIMUM PRISON TERMS."

{¶34} In his sixth assignment of error, Reives-Bey contends that the trial court abused its discretion in imposing the maximum prison terms. We conclude that this assignment of error is not ripe for our review.

{¶35} If, upon remand, the trial court concludes that Reives-Bey's convictions for robbery and grand theft are allied offenses of similar import and should be merged, then the trial court must resentence him. *State v. Vitt*, 9th Dist. No. 10CA0016-M, 2011-Ohio-1448, at ¶9-10. Accordingly, the issue of maximum prison terms is not ripe for review.

III.

**{¶36}** Reives-Bey's first, second, third, and fourth assignments of error are overruled. Reives-Bey's fifth assignment of error is sustained. We decline to address his sixth assignment of error. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

> Judgment affirmed in part,
> reversed in part,
> and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

CARLA MOORE
FOR THE COURT

DICKINSON, P. J.
BELFANCE, J.
CONCUR

APPEARANCES:

TODD M. CONNELL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.