[Cite as *State v. Jones*, 2012-Ohio-2744.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 26226 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| IMMANUEL D. JONES | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 06 1529 |

DECISION AND JOURNAL ENTRY

Dated: June 20, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Immanuel Jones, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} Shortly before midnight, a man armed with a gun threatened Robert Davis and then shot him once in the leg, shattering his femur and severing a vein. Davis recognized the man as Jones and used his cell phone to call 911. He then handed his cell phone to a woman he was with at the time and waited for help to arrive. Emergency medical personnel arrived first on the scene and began to treat Davis. Davis told one of the medics that a man named "Manny" had attacked him. He also gave the medic Manny's address. After the police arrived and the medics placed Davis into an ambulance, Davis gave the police the same information. Additionally, Davis later selected Jones from a photo array.

{¶3} The police went directly to the address Davis provided them for Manny, as it was nearby the crime scene. A woman at the home identified herself as Jones' mother and confirmed that "Manny" was Immanuel Jones, but that he was not home. The police stopped Jones after he returned home several hours later. Their search of the crime scene also uncovered a black, white, and gray knit cap on the ground not far from the spot where Davis was shot. Subsequent forensic testing revealed that Jones could not be excluded as the contributor of one of the two DNA profiles found on the cap.

{¶4} A grand jury indicted Jones on three counts: (1) felonious assault, in violation of R.C. 2903.11(A)(1)/(2); (2) having weapons while under disability, in violation of R.C. 2923.13(A)(2)/(3); and (3) aggravated trespass, in violation of R.C. 2911.211. The felonious assault charge also carried with it an attendant firearm specification under R.C. 2941.145. The State ultimately dismissed the aggravated trespass charge, and a jury found Jones guilty of the remaining two counts and the firearm specification. The court sentenced Jones to a total of eight years in prison.

{¶5} Jones now appeals from the trial court's judgment and raises two assignments of error for our review.

II

Assignment of Error Number One

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIME OF FELONIOUS ASSAULT AND HAVING WEAPONS UNDER DISABILITY BEYOND A REASONABLE DOUBT.

{¶6} In his first assignment of error, Jones argues that his convictions are against the manifest weight of the evidence because the State did not prove identity. Jones argues that the

jury lost its way in convicting him because the evidence showed that he did not perpetrate the crime against Davis. We disagree.

{¶7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶8} Brian Jaggers, a medic with the Akron Fire Department, arrived first at the scene where Davis was shot and began to treat him. Jaggers testified that Davis was in a great deal of pain, but immediately identified "Manny" as the man who shot him and gave Jaggers Manny's address. Officer Jeffrey Edsall also spoke with Davis at the crime scene once the medics placed Davis in the ambulance. Davis told Officer Edsall that Manny shot him and gave Officer Edsall Manny's address.

{¶9} Officer Peter Waters responded to the crime scene directly after the medics arrived, but found that Davis was not able to respond to his questions due to the amount of pain he was experiencing at the moment. Officer Waters searched the scene and found a black, white, and gray knit cap in the street not far from where Davis was shot. Stacy Violi from the Bureau of Criminal Identification and Investigation later tested the cap along with a DNA sample taken from Jones. Violi confirmed that Jones could not be excluded as a contributor of DNA she found on the cap. Moreover, at trial Davis positively identified the cap as the cap Jones was wearing at the time he shot Davis.

{¶10} Officers confiscated Jones' cell phone when they arrested him and submitted the phone for examination. Detective Guy Sheffield performed a forensic analysis on the phone and uncovered its call history as well as the text messages that Jones sent from the phone. Holly Hughes, the recipient of several calls and text messages from Jones, testified that Jones asked her for a ride on the night of the shooting. Hughes arranged to meet Jones at his home, sent him a text message when she was driving there, and sent him another text message when she arrived at his home at 11:59 p.m. Jones responded with a text message asking Hughes to pick him up around the corner instead. Hughes complied and then drove Jones to Timbertop Apartments. Eventually, the two returned to Jones' home and watched a movie. Hughes testified that Jones changed his clothes when they arrived and acted a "little more unfriendly" and "a little more distant" than usual during the evening.

{¶11} The police showed Davis two photo arrays at the hospital. Detective Pasheilich presented the first array to Davis within an hour of his arrival at the hospital. Detective Pasheilich stated that Davis appeared to be in pain when he spoke with him and was having difficulty staying awake. Davis selected a man from the array, but indicated that he was only

about 80% sure of his selection and that his attacker had facial hair, but the photograph did not. The photo Davis said he was 80% sure of was not a photo of Jones. A different photo array was presented to Davis shortly after 7:00 a.m. the same day. Sergeant Scott Lietke testified that he compiled the second photo array because, after reviewing the first array, he did not believe the selected picture of Jones accurately depicted his facial features. Accordingly, Sergeant Lietke used a different picture of Jones in the second array. Officer Russell Bassett presented the second photo array and testified that Davis positively identified Jones from the array on both his first and second viewings of it.

{¶12} Davis testified at trial that Jones shot him. According to Davis, he was familiar with Jones because he frequently purchased crack cocaine from him over the course of the year before this incident occurred. Davis knew where Jones lived as well as his cell phone number. Davis testified that Jones claimed Davis owed him money from a previous drug transaction and wanted the money. When Davis reached for his cell phone, Jones shot him in the leg.

{¶13} Jones argues that his convictions are against the manifest weight of the evidence because Davis gave the police inconsistent descriptions of the shooter when he first called 911 and his photo array identifications were unreliable. Officer David Hileman testified that the dispatcher who received Davis' 911 call initially relayed information to the police that the race of the perpetrator was unknown. Davis explained during his testimony, however, that although he initially dialed 911, he then handed his phone to the woman he was with when he was shot because he was in so much pain. Therefore, the dispatcher did not receive the description of Davis' assailant directly from Davis. The witnesses who did speak directly with Davis at the scene, Akron Medic Jaggers and Officer Edsall, testified that Davis identified "Manny" as his

attacker and gave them the address that belonged to Jones. As such, Davis gave both the men with whom he actually spoke in person a consistent identification.

{¶14} As to the photo arrays, Jones never sought to suppress Davis' identification and never objected to the photo array testimony at trial. Crim.R. 12 requires challenges to the admissibility of identification testimony to be raised by way of a motion to suppress. *State v. Reives-Bey*, 9th Dist. No. 25138, 2011-Ohio-1778, ¶ 10. By not challenging the admissibility of the identification Davis made when viewing the photo array here, Jones forfeited any objection to it and limited himself to a claim of plain error on appeal. *Id. Accord State v. Porter*, 9th Dist. No. 24996, 2010-Ohio-3980, ¶ 20. Jones neither argues plain error on appeal, nor explains how the admission of Davis' photo array identification prejudiced him. Davis gave multiple witnesses Jones' name and address long before any photo identification took place. Moreover, the police found a cap when searching the crime scene. Davis identified the cap as one that Jones had been wearing when he shot Davis and DNA testing confirmed that Jones could not be excluded as a source of the DNA. Based on our review of the record, we cannot conclude that the jury lost its way when it determined that Jones perpetrated the crimes against Davis. Jones' first assignment of error is overruled.

Assignment of Error Number Two

> APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO CHALLENGE IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCEDURES AND FAILED TO REQUEST EXPERT REVIEW OF OFFERED DNA EVIDENCE[.]

{¶15} In his second assignment of error, Jones argues that he received ineffective assistance of counsel because his counsel never sought to suppress the victim's unreliable photo array identification. He further argues that his counsel was ineffective because he did not retain

an expert to independently test the DNA evidence taken from the black, white, and gray knit cap. We disagree.

{¶16} To prove an ineffective assistance claim, Jones must show two things: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, Jones must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691. Furthermore, this Court need not address both *Strickland* prongs if an appellant fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, ¶ 10.

{¶17} The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." (Alteration omitted.) *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Trial counsel may decide, as a matter of strategy, not to file a motion to suppress. *State v. Downing*, 9th Dist. No. 22012, 2004-Ohio-5952, ¶ 20. Moreover, "[e]ven if there is a reasonable probability that the motion would have been granted, the failure to pursue it cannot be prejudicial unless there is also a reasonable probability that, without the excluded evidence, the defendant would have been acquitted." *State v. Malone*, 9th Dist. No. 10CA009754, 2011-Ohio-2445, ¶ 14. Jones has not shown that such a reasonable probability exists.

{¶18} Apart from the photo array identification Davis made, Davis told multiple witnesses at the crime scene that Jones shot him. He also gave those witnesses Jones' address. Additionally, the police found a knit cap with Jones' DNA near the crime scene and placed him in that area at the time of the shooting based on information taken from his cell phone. Jones has not demonstrated that he was prejudiced by his counsel's failure to file a motion to suppress the photo array identification. *Id.* Nor has he shown prejudice as a result of his counsel's failure to retain an independent DNA expert. "[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993). The State presented Violi as its expert, and defense counsel cross-examined Violi regarding the DNA tests she performed. In his assignment of error, Jones does not discuss the cross-examination his counsel performed; much less argue that it was deficient in any way. He also fails to set forth any argument that the DNA testing the State's expert performed was faulty or unreliable. Jones' argument that his counsel was ineffective lacks merit. His second assignment of error is overruled.

III

{¶19} Jones' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

DICKINSON, J.
BELFANCE, J.
CONCUR

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.