[Cite as *State v. Coffman*, 2015-Ohio-3722.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    14CA010649 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CRAIG A. COFFMAN | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    14CR089048 |

DECISION AND JOURNAL ENTRY

Dated:  September 14, 2015

HENSAL, Presiding Judge.

{¶1}    Craig Coffman appeals a judgment entry of the Lorain County Court of Common Pleas that convicted him of assault and domestic violence.  For the following reasons, this Court affirms.

I.

{¶2}    According to LeAnn Nielsen, on the evening of January 4, 2014, she brought a couple of women to her mother's house to show them a sewing machine that she was trying to sell.  Mr. Coffman, her brother, was at the house when they arrived.  He had been drinking and there were beer bottles everywhere.  After the women left, Ms. Nielsen began cleaning up the mess.  When Mr. Coffman came into the room, he asked Ms. Nielsen what her problem was and she replied that they would never be able to sell the house if he kept it in that state.  After the two separated, Ms. Nielsen called her friend Tony Petito.  She asked Mr. Petito to come over because she was concerned about her brother.  A little while later, Mr. Coffman announced that he was

leaving and asked Ms. Nielsen for beer money. Ms. Nielsen testified that, when she told Mr. Coffman that he was too drunk to use their mother's car, he punched her in the head with a closed fist, causing her to fall to the floor. He then straddled her and continued punching her until she lost consciousness. When Ms. Nielsen came to, she headed down to the basement where there was a bedroom that she sometimes used. As she reached the bottom of the staircase or just before, Mr. Coffman came up behind her and struck her with a baseball bat. He began hitting her again but was interrupted by pounding on a basement window. According to Ms. Nielsen, although she could not remember much of what happened next, she somehow got back upstairs and observed Mr. Petito going after her brother. Ms. Nielsen testified that she did not file a complaint against Mr. Coffman that night because she was concerned that he might be released after only an hour and come back to the house. After talking about the process with an officer again the next night, she went to the police station and filed a report.

{¶3} The Grand Jury indicted Mr. Coffman for one count of felonious assault and one count of domestic violence. A jury found him guilty of domestic violence and assault. The trial court sentenced him to 17 months imprisonment. Mr. Coffman has appealed, assigning three errors, which we have rearranged and combined for ease of consideration.

II.

ASSIGNMENT OF ERROR II

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION OF LESS[E]R INCLUDED OFFENSE OF ASSAULT.

ASSIGNMENT OF ERROR III

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION OF DOMESTIC VIOLENCE.

**{¶4}** Mr. Coffman argues that there was insufficient evidence for the jury to find that he assaulted Ms. Nielsen or committed domestic violence against her. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶5}** The jury found Mr. Coffman guilty of assault under Revised Code Section 2903.13(A) and domestic violence under Section 2919.25(A). Section 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Section 2919.25(A) contains similar language except that it provides that the harm must be against a family or household member. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Physical harm means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶6}** According to Mr. Coffman, the evidence failed to establish beyond a reasonable doubt that he knowingly caused physical harm to his sister. Ms. Nielsen testified, however, that Mr. Coffman repeatedly punched her in the head, struck her with a bat, and pulled out her hair. The State introduced photographs that a police officer took of Ms. Nielsen's face after the

incident that show the bruising she suffered in the attack. This Court has also recognized that hitting someone with a closed fist is an action which is likely to cause harm. *State v. Good*, 9th Dist. Wayne Nos. 10CA0056, 10CA0057, 2011-Ohio-5077, ¶ 21. The jury, therefore, could have reasonably inferred that Mr. Coffman knowingly caused or attempted to cause harm to Ms. Nielsen. *Id*. Mr. Coffman's second and third assignments of error are overruled.

ASSIGNMENT OF ERROR I

THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶7} Mr. Coffman also argues that his convictions are against the manifest weight of the evidence. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶8} Mr. Coffman argues that Ms. Nielsen's testimony was not credible. He argues that there were no witnesses to corroborate her testimony and that the only reason she pressed charges against him was because a police officer pressured her. He also argues that, if he had done what she alleged, she would not have refused medical attention and the officer would have reacted differently to the situation.

{¶9}    At trial, Mr. Coffman testified that, on the day of the alleged attack, he drove Ms. Nielsen to the bar where she worked. He returned later to drive her home, but Ms. Nielsen wanted to stay at the bar. Sometime later, a car arrived at the house, and two women helped Ms. Nielsen down to her room. A little while later, Mr. Petito arrived and immediately went downstairs. After Mr. Coffman heard arguing, he went downstairs and saw his sister sitting on her bed crying. She had a cut on her face and her hair looked like it had been pulled. Mr. Petito told him to go away and, when Mr. Coffman hesitated, punched him in the face. Mr. Coffman ran upstairs and tried to use his phone, but Mr. Petito grabbed it from him and smashed it. Mr. Coffman, therefore, decided to walk to a nearby gas station to call the police. When he arrived at the gas station, he noticed a police cruiser in the parking lot, so he knocked on the window of the cruiser and told the officer what had happened.

{¶10}   The officer's testimony did not support Mr. Coffman's version of the events. It was, however, consistent with Mr. Petito's. According to Mr. Petito, when he arrived at Ms. Nielsen's mother's house, no one answered the door. Because he knew Ms. Nielsen had a room in the basement, he knocked on the basement windows, and Mr. Coffman subsequently let him in the house. When Ms. Nielsen came upstairs, he saw that her face was beaten and that she was holding a clump of her hair, so he grabbed Mr. Coffman and slammed him against a wall, then dragged him outside and threw him off the porch. He went back inside to attend to Ms. Nielsen and ask her what had happened. As she described for him what had occurred, she also indicated that she could not find her cell phone. It appears that Mr. Petito got the impression from her statements that Mr. Coffman may have taken it, so he left Ms. Nielsen and went to find Mr. Coffman to get the phone back. Once outside, Mr. Petito headed toward the main road because he assumed that was the direction Mr. Coffman would have headed. When he reached the road,

he saw that there was a police cruiser in the parking lot of a gas station. The officer was not in the cruiser, so he went inside and spotted the officer getting some coffee. He told the officer what had happened to Ms. Nielsen, and the officer told him that he would follow Mr. Petito back to the house after he paid. Mr. Petito testified that, while he was waiting outside for the officer, he saw Mr. Coffman in the parking lot, so he grabbed him and told him to go over to the police cruiser, to which the officer had returned. The officer corroborated Mr. Petito's testimony that Mr. Petito approached him while he was getting coffee inside the gas station and that Mr. Petito sent Mr. Coffman over to talk to him at his cruiser. The officer explained that he had to let Mr. Coffman go after asking him a few questions, however, because he did not have any evidence to support Mr. Petito's allegations as he had not yet spoken with the alleged victim.

{¶11} It was within the jury's province to determine the weight to be given the evidence. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In light of the consistency between Ms. Nielsen's testimony, Mr. Petito's testimony, and the officer's testimony, we cannot say that the jury clearly lost its way when it chose to accept their version of the facts instead of Mr. Coffman's, which was not supported by any other evidence. Mr. Coffman's first assignment of error is overruled.

### III.

{¶12} Mr. Coffman's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JENNIFER HENSAL
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ROBERT CABRERA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.