[Cite as *State v. Scott*, 2016-Ohio-682.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    27846 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEANDRE SCOTT | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 15 02 0381 |

DECISION AND JOURNAL ENTRY

Dated: February 24, 2016

HENSAL, Judge.

{¶1}    DeAndre Scott appeals his convictions from the Summit County Court of Common Pleas for aggravated robbery, aggravated burglary, and gross sexual imposition. For the following reasons, this Court affirms.

I.

{¶2}    T.C. testified that she was home from school on the afternoon of December 16, 2014, when she heard someone knocking on the front door. She asked who it was through the door, and a man replied that he was looking for "G Money," which is her step-father's nickname. When T.C. told the man that her step-father was not home, he asked if he could leave his number. T.C. agreed and opened the front door of the house. At that point, the man opened a screen door that was also at the front door and entered the house.

{¶3}    Once inside, the man asked T.C. if there was anyone else around. When T.C. answered that the only other person home was her little cousin, he produced a gun and asked her

where the "stuff" was. T.C. told him that she did not know what he was talking about. The man then asked her where the money was, which made T.C. think that he was referring to money that her mother had been saving to purchase a bar. T.C. told him that she did not know where it was, so he began ordering her throughout the house so he could search for it. By the time they reached her mother's bedroom, the man was growing agitated and he pushed her on the bed. He put the gun against her head and asked her if she thought it was a game. The man then rubbed her buttocks and vagina before going back to his search. In the bedroom, he found an iPad and a grocery bag with approximately $5,000. He then left the house with both the iPad and the bag of cash.

{¶4} After the man left, T.C. called her mother, Tiffany Golden, who came home. On her way into the house, Ms. Golden spotted a condom lying on the front porch. The packaging was torn, but the condom was still inside. Ms. Golden had not seen the condom when she left that morning, and she picked it up and carried it inside to throw it away. After talking to T.C., she called the police. At some point, Ms. Golden realized that the condom might be associated with the robbery, so she took it back out of the trash. According to Officer Jason Beck, it was sitting on a table when he arrived at the house.

{¶5} After speaking to T.C., the police began looking for a man who matched the description she gave them. When they found a potential suspect in her neighborhood, they had T.C. look at a photo array that included a picture of the potential suspect, who was not Mr. Scott. Although T.C. selected the man out of the array, she said that she was only 50 percent confident in her selection. A detective, therefore, had the condom tested for DNA evidence. The results indicated that, although there was more than one contributor to the DNA on the package, Mr. Scott's profile was consistent with it. The detective, therefore, prepared another photo array with

Mr. Scott's photo in it. This time, as soon as she saw Mr. Scott's photo, T.C. identified him as the man who came into her house with 100 percent confidence.

{¶6} The Grand Jury indicted Mr. Scott for aggravated burglary, aggravated robbery, and gross sexual imposition. At trial, T.C. again identified Mr. Scott as the person who broke into her house. The jury found Mr. Scott guilty of the offenses, and the trial court sentenced him to fourteen and a half years in prison. Mr. Scott has appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mr. Scott argues that his convictions are against the manifest weight of the evidence. In particular, he challenges the jury's finding that it was he who broke into Ms. Golden's house, stole her money and iPad, and inappropriately touched T.C. If a defendant asserts that his convictions are against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶8} Mr. Scott argues that the evidence presented against him was inconsistent and unclear. He notes that T.C. originally said that she was 50 percent sure that it was a different

man who invaded her home. While she claimed that she was 100 percent certain about his picture, she did not view the second photo array until a month and a half after the incident. Mr. Scott also notes that there were multiple contributors to the DNA on the condom wrapper and that, statistically, there are at least 12 or 13 other people in the country who match the profile. He further notes that the police did not attempt to match anyone else's DNA to the profile. According to Mr. Scott, condoms are sometimes passed around, so the fact that his DNA was on one does not mean he was at Ms. Golden's house.

{¶9} Mr. Scott also argues that the State failed to present any evidence of motive or opportunity. He notes that there was no evidence that he had any type of association with Ms. Golden or her family, let alone that he knew that there was a large amount of cash at their house. He also notes that, although T.C. testified that he looked all over the house for the money, the police did not try to recover any fingerprints. He also notes that none of the people that he lived with at the time of the incident testified that he appeared to come into money around that time. They also had never seen him with a gun or an iPad. The police also never searched his living quarters for the stolen items.

{¶10} Despite the fact that the State did not clearly establish how Mr. Scott may have learned that Ms. Golden had $5,000 at her house, his DNA profile is consistent with the DNA recovered from the condom that Ms. Golden found on the front porch of her house, and which she indicated was not there when she left for work that morning. T.C. also identified Mr. Scott as her assailant as soon as she saw his picture in the photo array and identified him again at trial. The jury was free to believe any or all of her testimony. "A conviction is not against the manifest weight because the jury chose to credit the State's version of events." *State v. Peasley*, 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18. Upon review of the record, we conclude

that this is not the extraordinary case in which the evidence weighed heavily in favor of Mr. Scott or where the jury clearly lost its way when it convicted him of the offenses. *See id.* Mr. Scott's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT MERGE THE AGGRAVATED BURGLARY CONVICTION AND THE AGGRAVATED ROBBERY CONVICTION AS ALLIED OFFENSES UNDER THE ANALYSIS IN *STATE V. JOHNSON*.

{¶11} Mr. Scott also argues that the trial court erred because it did not merge his aggravated burglary and aggravated robbery convictions at sentencing. According to Mr. Scott, the offenses were all part of the same course of conduct with the same animus and, therefore, should have been merged. We review a trial court's decision regarding merger de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶12} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court explained:

Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following are true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id.* at paragraph three of the syllabus.

{¶13} This Court has recognized that aggravated burglary and aggravated robbery are generally not allied offenses because the aggravated burglary is complete "upon an offender's forced entrance and an aggravated robbery requires additional conduct." *State v. Giles*, 9th Dist. Summit No. 27339, 2015-Ohio-2132, ¶ 11, quoting *State v. Linde*, 9th Dist. Summit No. 26714, 2013-Ohio-3503, ¶ 18. There is an exception to that rule if the offender was convicted strictly

under the physical harm sections of both the aggravated burglary and aggravated robbery statutes, but it does not apply in this case. *See id*.

**{¶14}** The trial court explained that Mr. Scott's offenses did not merge because he completed the aggravated burglary offense "the minute he stepped through the door with that firearm[.]" He committed aggravated robbery, on the other hand, when he "proceeded then to force [T.C.] around the house at different times with her hand behind her back, with the gun to her head, [and] with the gun to her back * * *." The court's explanation was consistent with our precedent. *See id*. at ¶ 12; *Linde* at ¶ 19. Upon review of the record, we conclude that Mr. Scott completed the aggravated burglary offense when he entered the house through the screen door with a firearm in his possession. His aggravated robbery offense, arising from when he subsequently forced T.C. around the house at gunpoint and ultimately stole an iPad and cash from Ms. Golden, was "committed separately" under Section 2941.25(B). *See State v. Johnson*, 88 Ohio St.3d 95, 115 (2000) (explaining that defendant committed aggravated burglary separately from aggravated robbery because he committed aggravated burglary when he entered an occupied home while carrying a baseball bat, but only committed aggravated robbery when he later used the bat to beat someone); *State v. Frazier*, 58 Ohio St.2d 253, 256 (1979) ("Whether an intended felony was committed is irrelevant to the burglary charge. But when the intended felony is actually committed, a new crime arises for which the defendant may be convicted."). Mr. Scott's second assignment of error is overruled.

III.

**{¶15}** Mr. Scott's convictions are not against the manifest weight of the evidence and the trial court did not err when it determined that his aggravated burglary and aggravated robbery

convictions are not subject to merger. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MICHAEL J. GOEBL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.