[Cite as *State v. Carson*, 2013-Ohio-5785.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26900 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHERRY ANN CARSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2012-07-1984 |

DECISION AND JOURNAL ENTRY

Dated: December 31, 2013

WHITMORE, Judge.

{¶1} Defendant-Appellant, Sherry Carson, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In 2012, Sherry and Scott Carson (collectively, "the Carsons") were the primary caregivers for Scott's elderly mother, Shirley. At that time, Shirley had been living with the Carsons for about four years. Because of her flexible work schedule, Sherry was responsible for the bulk of Shirley's care. These responsibilities included taking Shirley to medical appointments and filling her prescriptions. The Carsons filled their family's prescriptions at their local Giant Eagle pharmacy.

{¶3} On May 12, 2012, Shirley passed away. The Carsons testified that, within a couple of weeks after her passing, they received several automated calls from the Giant Eagle

pharmacy telling them that Shirley had a prescription ready to be picked up. These calls were upsetting to Scott, and Sherry promised that she would take care of it.

{¶4} On June 1, 2012, Sherry went to Giant Eagle to shop for groceries. She testified that she stopped at the pharmacy and requested that the automated phone calls stop because Shirley was deceased. According to Page Bedlion, the Giant Eagle pharmacy technician, Sherry did not request to be removed from the automated phone system, but, instead, requested that Shirley's prescriptions be refilled. After Sherry left the pharmacy to do her grocery shopping, Bedlion discovered that she could not process the prescriptions because Shirley was deceased. She then notified Beth Toalston, one of the pharmacists on duty. Upon confirming that Shirley was deceased, Toalston contacted the police.

{¶5} When the police arrived at Giant Eagle, they located Sherry in a check-out line paying for her groceries. The officers stood near the exit, which was close-by the pharmacy, and watched her check-out and then exit the store. Sherry made no attempt to pick up the prescriptions at the pharmacy. The officers followed Sherry outside and approached her at her car. Sherry denied attempting to fill the prescriptions and informed the officers that she went to the pharmacy to request removal from the automated phone system.

{¶6} After further investigation, Sherry was indicted on one count of deception to obtain a dangerous drug, in violation of R.C. 2925.22, a felony of the fifth degree. A jury found her not guilty of this offense, but did find her guilty of the lesser-included offense of attempting to obtain a dangerous drug by deception. The court sentenced Sherry to six months in jail, suspending all but three days, and one year of probation. Sherry now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

MRS. CARSON'S COUNSEL WAS INEFFECTIVE FOR FAILING TO SUBPOENA, OR PRESENT, IMPERATIVE EVIDENCE TO SUPPORT HER OWN TESTIMONY, AS WELL AS REBUT THE TESITMONY (sic) OF THE STATE'S KEY WITNESS.

{¶7} In her first assignment of error, Sherry argues that her counsel was ineffective for failing to present evidence that would support her version of the events. Specifically, she argues that her counsel was ineffective for failing to subpoena Giant Eagle's records and to "secure [her] own telephone records in advance of trial" because these records would have shown that the Carsons had received phone calls from the Giant Eagle pharmacy after Shirley's death.

{¶8} "On the issue of counsel's ineffectiveness, [Sherry, as the appellant,] has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, Sherry must establish that (1) her counsel's performance was deficient, and (2) that but for counsel's deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This Court need not address both *Strickland* prongs if an appellant fails to prove either one. *State v. Jones*, 9th Dist. Summit No. 26226, 2012-Ohio-2744, ¶ 16.

{¶9} Sherry first argues that her counsel was ineffective for failing to subpoena Giant Eagle's records regarding its automated calling system. Based on the evidence in the record, we do not agree.

{¶10} Toalston, a pharmacist with Giant Eagle for the past nine years, testified about a couple of ways that Giant Eagle may have automated contact with patients. First, there is a "refill on time" program. If a patient signs up for this program, his or her prescription will be

automatically refilled when it is due and the patient will be notified that it is ready for pick-up. This program allows the patient to specify how he or she would like to be contacted, either by phone, email, or both.

{¶11} Both Toalston and Bedlion testified that Shirley was not enrolled in the refill on time program. Admitted into evidence at trial was a series of computer screen printouts of Shirley's Giant Eagle pharmacy record. Toalston and Bedlion testified that Shirley's refill on time screen showed that none of her prescriptions were enrolled in the automated program. Additionally, Toalston and Bedlion explained that the only phone number listed in her record was that of the Giant Eagle pharmacy, which meant that the computer could not have generated a call to her home even if she was enrolled in the program.

{¶12} At trial, Sherry argued that the computer screen printouts were not made until at least two weeks after the incident, evident by a date displayed in Shirley's record. Sherry contended that it was possible that Shirley was un-enrolled after June 1st and before the record was printed. However, Bedlion testified that she believed the computer still kept the enrollment date intact when a person was un-enrolled. There was no testimony to the contrary.

{¶13} In addition to the refill on time program, Toalston testified about Giant Eagle's Patient Support Program. According to Toalston, as part of this program, the corporate office mails letters to patients informing them that their prescription is due to be refilled. Toalston explained that the drugs covered in this program are primarily "maintenance" drugs, those that the company feels are important for the patient to continue taking, and that the store receives compensation from the drug's manufacturer for the program. There is no evidence in the record that phone calls are placed to patients through the Patient Support Program.

{¶14} Sherry presented three letters she had received from Giant Eagle as evidence of its contact with the Carsons regarding Shirley's prescriptions. The letters, dated December 14, 2010, January 11, 2011, and July 2012, were mailed to the Carsons' home address and informed Shirley that she may be due for a refill on her prescription for Effient. Each letter included a toll-free number to opt-out of the Patient Support Program and future mailings. Toalston testified that the letters presented by Sherry were from the Patient Support Program.

{¶15} Additionally, Toalston testified that automated calls could come from the corporate office. For example, an automated call will be placed to a patient if a filled prescription is not picked up after nine days. Toalston testified that the corporate office is responsible for this automated system. It is unclear from the record whether the corporate office uses the same patient database maintained at the pharmacy or if it has a separate database with patient names and phone numbers. However, there was absolutely no testimony that Shirley's prescriptions had been filled and were awaiting pick-up.

{¶16} Scott testified that shortly after Shirley's passing he received a couple of automated phone calls from the Giant Eagle pharmacy telling him that Shirley's prescriptions were ready to be picked up. According to Scott, he received the first call within a week of Shirley's death. To his knowledge, Sherry had not enrolled in any automated notification program. Sherry testified that the family received two phone calls from the Giant Eagle pharmacy on their home phone after Shirley's death and that she had never enrolled in any automated notification program.

{¶17} The record does not contain any evidence that Giant Eagle had Shirley's phone number or that she was enrolled in any automated notification program. Because there is no evidence in the record to support the conclusion that Giant Eagle's records would have

reinforced Sherry's testimony, she cannot establish that she was prejudiced by her counsel's failure to subpoena such records. Because Sherry has not established prejudice her claim of ineffectiveness of counsel, as it relates to the subpoenaing of Giant Eagle's records, must fail. *See Strickland*, 466 U.S. at 687.

{¶18} Sherry next argues that her counsel was ineffective for failing to secure her phone records prior to trial or to have them admitted into evidence based on impeachment testimony.

{¶19} Sherry testified that the phone calls that she received from Giant Eagle were to her home phone. Further, she testified that she attempted to get her home phone records from her telephone provider, but was not able to do so. Sherry's attorney proffered that when Sherry attempted to get her home phone records from her telephone provider she was told that Giant Eagle's automated calls "bounced from satellites" so the pharmacy's number would not appear on a list of incoming calls to her home phone. Therefore, Sherry's home phone records would not support her version of the events. Consequently, to the extent that Sherry argues her counsel was ineffective for failing to secure her home phone records, it is without merit and is overruled.

{¶20} At trial, Sherry attempted to admit into evidence a document allegedly related to her cell phone. The document is a one page portion of a cell phone bill that shows the Giant Eagle pharmacy number, a date of September 13, 2012, and a call duration of one minute. The document does not indicate whether the call was incoming or outgoing. Regardless, the date of the call is approximately three months after the incident and has no bearing on whether the Carsons received calls from Giant Eagle to their home phone in May. Sherry has not established a reasonable probability that the admission of this document would have altered the outcome of her trial. *See Strickland*, 466 U.S. at 687. Because Sherry has failed to establish that she was

prejudiced by her attorney's failure to admit into evidence a copy of her cell phone record prior to trial, her claim of ineffective assistance of counsel must fail.

{¶21} Sherry's first assignment of error is overruled.

Assignment of Error Number Two

THE COURT ERRED IN DENYING MRS. CARSON'S MOTION FOR RULE 29 [RELIEF] FOR JUDGMENT OF ACQUITTAL AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} In her second assignment of error, Sherry argues that her conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

**Sufficiency**

{¶23} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Vargas*, 9th Dist. Lorain No. 12CA010195, 2013-Ohio-4281, ¶ 5, quoting *State v. Slevin*, 9th Dist. Summit No. 25956, 2012-Ohio-2043, ¶ 15. "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶24} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court,

therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

**{¶25}** R.C. 2925.22(A) provides, in relevant part, that "[n]o person, by deception, shall procure * * * the dispensing of[] a dangerous drug * * *." "'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading misrepresentation, by withholding information, * * * or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A). *See also* R.C. 2925.01(KK). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). To "procure" is "to get possession of: obtain by particular care and effort[.]" Merriam-Webster's Collegiate Dictionary, 990 (11th Ed.2004).

**{¶26}** R.C. 2923.02(A) provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." A person who violates R.C. 2923.02 is guilty of attempt to commit an offense. R.C. 2923.02(E)(1). A criminal attempt occurs when the offender commits an act that constitutes a substantial step toward the commission of an offense. *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, *overruled in part*, *State v. Downs*, 51 Ohio St.2d 47 (1977), paragraph one of the syllabus. "A 'substantial step' includes conduct that is 'strongly corroborative of the actor's criminal purpose.'" *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 8, quoting *Woods* at paragraph one of the syllabus.

{¶27} Sherry argues that her conviction is not supported by sufficient evidence because "the State failed to provide proof beyond a reasonable doubt that [she] had 'procured', or attempted to 'procure', a dangerous drug, an element of the offense * * *." We disagree.

{¶28} Bedlion testified that Sherry approached the "drop-off" section of the pharmacy counter and requested four prescriptions be filled for her mother-in-law. One of the prescriptions was for Hydrocodone, the generic name for Vicodin.[1] Bedlion explained that she went to the computer and asked for Sherry's mother-in-law's name and date of birth. Upon finding Shirley's record, she recited the last four medications and asked Sherry if those were "the four she needed." Sherry replied, "yes." Bedlion then informed her that there would be about a 45 minute wait, and Sherry replied that that was okay because she had some shopping to do.

{¶29} Bedlion testified that after Sherry left the counter she attempted to process the prescriptions, however, because Shirley was deceased, the computer would not let her complete the transaction. Bedlion said she then notified Toalston, and Toalston placed a call to Shirley's doctor. After confirming that Shirley was deceased, Toalston called the police.

{¶30} Officers Roy Smith and Billie Laurenti responded to the call. The officers identified Sherry while she was in the check-out line paying for her groceries. They walked down the line of cash registers, back again, and stood by the exit doors, which were located next to the pharmacy. After Sherry finished paying for her groceries, she walked past the officers and

---

[1] The parties stipulated that Vicodin is a Schedule III drug. Sherry's indictment detailed that Vicodin is a Schedule III drug, and Toalston, the pharmacist testified that Vicodin is a Schedule III drug. Hydrocodone, however, is a Schedule II drug. R.C. 3719.41. While we note the error, we also note there has been no prejudice to Sherry. Had Sherry been indicted on deception to obtain a dangerous Schedule II drug, she would have faced a higher level of offense. *See* R.C. 2925.22(B)(2), (3).

exited the store. She made no attempt to pick up the prescriptions at the pharmacy. The officers followed Sherry to her car, which was parked a short distance away.

**{¶31}** Viewing the evidence in a light most favorable to the prosecution, a rationale juror could have concluded that Sherry requested Bedlion refill the Vicodin prescription of her deceased mother-in-law and that request was a substantial step in procuring a dangerous drug by deception. Sherry's conviction, therefore, is supported by sufficient evidence.

**Manifest Weight of the Evidence**

**{¶32}** A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

**{¶33}** The Carsons testified that, after Shirley's death, they received a couple of phone calls from the Giant Eagle pharmacy informing them that Shirley had a prescription ready for

pick-up. According to Sherry, she stopped by the pharmacy on June 1st and requested that the automated calls stop because Shirley was deceased. She testified that Bedlion went to the computer and recited the names of "three" medications, to which Sherry responded, "All of them." According to Sherry, Bedlion informed her that it would take about 45 minutes "before they could take care of it." Sherry then told Bedlion that she had some shopping to do and that they could page her if she was needed. Sherry testified that she spent the next hour or so shopping for groceries and left the store. She did not notice the officers until they approached her at her car. Sherry denied attempting to fill any prescription and told the officers that she stopped by the pharmacy to request she be removed from the automated call list.

{¶34} Bedlion testified that Sherry approached the counter and requested to fill four prescriptions for her mother-in-law. According to Bedlion, Sherry could not remember the names of the prescriptions she wanted filled, but said that she wanted the same prescriptions she had filled last month. Bedlion went to the computer and asked for her mother-in-law's name and date of birth. Upon finding Shirley's record, she recited the four drugs that were filled last month and asked Sherry "if those were the four she needed." According to Bedlion, Sherry replied, "yes." Bedlion then told Sherry that it would be about a 45 minute wait and filled out a prescription bag with Shirley's name, date of birth, number of prescriptions requested, and the time the prescription would be ready for pick-up. Bedlion denied the possibility of a misunderstanding. According to Bedlion, Sherry clearly requested Shirley's prescriptions be refilled, never told her that Shirley was deceased, and never requested to be removed from the automated phone list.

{¶35} After hearing the conflicting testimony, the jury chose to believe Bedlion's version of the events. "Credibility determinations are primarily within the province of the trier

of fact." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42.  The jury was "in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the [jury] chose to believe certain witnesses' testimony over the testimony of others."  *State v. Campanalie*, 9th Dist. Summit No. 26383, 2013-Ohio-3509, ¶ 21, quoting *State v. Ross*, 9th Dist. Wayne No. 12CA0007, 2013-Ohio-522, ¶ 16.  After reviewing the record, we cannot conclude that the jury clearly lost its way in choosing to believe Bedlion's version of the events over Sherry's.

**{¶36}** Sherry's conviction is not against the manifest weight of the evidence.  Her second assignment of error is overruled.

## III

**{¶37}**  Sherry's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


HENSAL, J.
CONCURS.

MOORE, P. J.
CONCURRING IN PART, DISSENTING IN PART, SAYING:

{¶38} I concur in the opinion of the majority with respect to the first assignment of error and with respect to its analysis of the Criminal Rule 29 portion of the second assignment of error. The manifest weight assignment of error is particularly troubling to me and has compelled me to write separately to address it.

{¶39} Ms. Carson is accused of deception to obtain a dangerous drug, for presenting herself to a grocery store pharmacy shortly after the death of her mother-in-law in an attempt to procure a refill of her mother-in-law's pain medications. The appellant, who had been the primary caregiver, told the police the same thing she told the jury: that she went to the pharmacy and told the pharmacy tech to discontinue the automated calls for the four prescriptions for her mother-in-law. Her husband of 32 years took the witness stand and confirmed that automated calls had been made to their home, prompting the visit to the pharmacy to stop them. The pharmacy tech, who had only been in her position for a couple of months, was convinced that she heard Ms. Carson ask to refill (and not cancel) the prescriptions. When the order would not go through the computer, the pharmacist was called. She confirmed that the patient had died, and immediately called the police.

{¶40} What troubles me is that the conviction does not rise or fall on the credibility of witnesses in the strictest sense of the term. Defense counsel made clear that no one challenges that the pharmacy tech genuinely believed that she was asked to refill a prescription. The challenge is that, given the circumstances surrounding the pharmacy at the time, she might have been genuinely mistaken. Her perception is what, in large part, has secured the conviction of Ms. Carson on the lesser included offense. After having read every page of the trial transcript and viewed every exhibit offered or admitted into evidence, I walk away from this case deeply troubled that the life and liberty and reputation and livelihood of a person can hinge on bits and pieces of a 60 second conversation over the counter of a crowded, noisy pharmacy desk.

{¶41} The standard of review on appeal of a criminal manifest weight challenge requires me to sit as a "thirteenth juror," reviewing the entire record and weighing the evidence, including the credibility of witnesses. Having done so, I must say that I have reasonable doubt that Ms. Carson committed a crime. She and her husband both testified to having received automated phone calls from the pharmacy. While the State presented evidence that no phone number for the Carsons showed up in the pharmacy's computer, the evidence also revealed that both the local and the corporate offices engaged in programs to remind patients to pick up prescriptions. Pharmaceutical companies also promoted their products and collaborated with Giant Eagle to keep their products before the public. In short, the evidence was less than overwhelming to rebut the Carsons' claim of having received phone calls.

{¶42} Second, Ms. Carson left the store without making any attempt to return to the pharmacy to pick up the prescription. She never halted or equivocated when asked by the police about why she had come to the pharmacy. And, the police officers believed her when she told them that she had come to stop the phone calls, telling her that the incident at the pharmacy was

probably just a misunderstanding. Finally, while the State suggests Ms. Carson's back pain as a motive for attempting to procure drugs, she treated with a physician who performed surgery and prescribed a potent pain reliever that was stronger than the drug she was accused of attempting to obtain.

{¶43} On the whole, I am not convinced beyond a reasonable doubt that she is guilty. In fact, I believe that the jury lost its way, and by convicting her created a manifest miscarriage of justice such that the conviction should be reversed and a new trial ordered.

{¶44} Accordingly, I would affirm in part and reverse in part.


APPEARANCES:

BRIAN M. PIERCE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.