[Cite as *State v. Walton-Kirkendoll*, 2017-Ohio-237.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO

    Appellee

    v.

TIMOTHY WALTON-KIRKENDOLL

    Appellant

C.A. No.    16CA010907

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14CR089005

DECISION AND JOURNAL ENTRY

Dated: January 23, 2017

HENSAL, Judge.

{¶1}    Timothy Walton-Kirkendoll appeals a judgment of the Lorain County Court of Common Pleas that convicted and sentenced him for endangering children. For the following reasons, this Court affirms.

I.

{¶2}    On the evening of October 12, 2015, Latoya Tillman left three of her children with her 20-year-old boyfriend, Mr. Walton-Kirkendoll, while she attempted to get her car out of impound. Because the children had already been put to bed, Mr. Walton-Kirkendoll left Ms. Tillman's apartment and went across the hall to where several people had gathered for a party. Mr. Walton-Kirkendoll brought a glass of vodka with him.

{¶3}    After approximately 20 minutes of drinking and smoking marijuana, Mr. Walton-Kirkendoll went downstairs, intending to smoke a cigarette outside. Having forgotten his cigarettes in Ms. Tillman's apartment, he returned upstairs. When he entered the apartment, he

noticed that Ms. Tillman's two-and-a-half year old son, D.B., was lying on the floor with noodles and a green substance coming out of his nose. He tried to rouse D.B., who was having difficulty breathing, by bringing him into the bathroom, placing him in the bathtub, and splashing water on him. About 20 minutes after Mr. Walton-Kirkendoll found D.B., Ms. Tillman called him. Upon learning that D.B. was in distress, Ms. Tillman called 911. When she arrived back at the apartment complex a few minutes later, she saw a police officer and got his attention. When the officer entered the apartment and saw D.B., he told Mr. Walton-Kirkendoll not to perform CPR on D.B. if D.B. was still breathing because it could cause injury. By the time paramedics arrived, D.B. did not have a pulse, and the paramedics were unable to resuscitate him. An autopsy revealed that D.B. had an ounce to an ounce and a half of alcohol in his system. He also had experienced blunt force trauma to his trunk, causing the laceration of his mesentery and loosening of his vertebrae.

{¶4} The Grand Jury indicted Mr. Walton-Kirkendoll for involuntary manslaughter and three counts of endangering children. A jury acquitted him of the involuntary manslaughter count, but found him guilty of the endangering children counts. The trial court sentenced him to 12 months imprisonment. Mr. Walton-Kirkendoll has appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE VERDICTS FOR ENDANGERING CHILDREN, AS DEFINED BY THE TRIAL COURT, IN COUNTS TWO, THREE, AND FOUR WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WIEGHT OF THE EVIDENCE.

{¶5} Mr. Walton-Kirkendoll argues that his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} If, on the other hand, a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶7} The jury convicted Mr. Walton-Kirkendoll of endangering the three children that Ms. Tillman asked him to watch while she attempted to retrieve her car. Revised Code Section 2919.22(A) provides, in relevant part, that "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." "'Substantial risk' means a strong possibility, as contrasted with a

remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Although Section 2919.22(A) does not specify the degree of culpability required to commit the offense, the Ohio Supreme Court has concluded that "[t]he existence of the culpable mental state of recklessness is an essential element of the crime of endangering children[.]" *State v. McGee*, 79 Ohio St.3d 193 (1997), syllabus. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶8} Mr. Walton-Kirkendoll argues that his convictions are not supported by sufficient evidence because there was no evidence presented that he was aware of a substantial and unjustifiable risk to the children. The record indicates, however, that Mr. Walton-Kirkendoll told law enforcement that he left a cup with alcohol sitting out in the living room while he was at the party. According to Mr. Walton-Kirkendoll, he poured two glasses of vodka for himself before heading to the party, one that he mixed with blue Kool-Aid and the other that was straight vodka. During an interview with law enforcement, Mr. Walton-Kirkendoll stated that he left the cup containing the mixture at Ms. Tillman's apartment. It was empty when he returned to the apartment and D.B.'s breath smelled like alcohol.

{¶9} The evidence also indicates that D.B. was put to bed on the living room couch, which is where he liked to sleep. Mr. Walton-Kirkendoll also told law enforcement that he left the door of Ms. Tillman's apartment unlocked while he was inside the apartment across the hall. The ages of the children were five, two-and-a-half, and seven months. Viewing the evidence in a

light most favorable to the prosecution, we conclude that the unlocked door and open cup of alcohol that looked like Kool-Aid presented a substantial and unjustifiable risk to the health and safety of Ms. Tillman's children. Accordingly, we conclude that Mr. Walton-Kirkendoll's endangering children convictions are supported by sufficient evidence.

{¶10} Regarding the weight of the evidence, Mr. Walton-Kirkendoll argues that the jury lost its way when it found that he acted recklessly when he abandoned his duty of care. According to the record, as soon as Ms. Tillman left for the impound lot, Mr. Walton-Kirkendoll went over to the party. Although two of the children were sleeping at the time, Mr. Walton-Kirkendoll told law enforcement that D.B. had only been put to bed on the couch and was not sleeping at the time he left for the party. The risks involved in leaving small children unsupervised are common knowledge. *City of Mason v. Rasmussen*, 12th Dist. Warren No. CA2000-08-077, 2001 WL 290248, *3 (Mar. 26, 2001). Upon review of the record, we cannot say that the jury clearly lost its way when it found that Mr. Walton-Kirkendoll acted recklessly when he left three small children in an apartment alone for 20 minutes and not only left the door of the apartment unlocked, but also a cup of Kool-Aid containing vodka near one of the children. Mr. Walton-Kirkendoll's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE STATE'S USE OF A PEREMPTORY CHALLENGE TO DISMISS PROSPECTIVE JUROR 19 CONSTITUTED A VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED TO HIM BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

{¶11} Mr. Walton-Kirkendoll also argues that the State improperly excused one of the prospective jurors because of her race. He argues that the State failed to establish that it had a race-neutral reason for excusing the juror.

{¶12} "The Equal Protection Clause of the United States Constitution prohibits deliberate discrimination based on race by a prosecutor in his exercise of peremptory challenges." *State v. Campbell*, 9th Dist. Summit No. 24668, 2010-Ohio-2573, ¶ 33, citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). "A court adjudicates a *Batson* claim in three steps." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 61, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106. "First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination." *Id.*, quoting *Bryan* at ¶ 106. "Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge." *Id.*, quoting *Bryan* at ¶ 106. "Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination." *Id.*, quoting *Bryan* at ¶106. "The judge must 'assess the plausibility' of the prosecutor's reason for striking the juror 'in light of all evidence with a bearing on it.'" *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 63, quoting *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). "A facially neutral reason for a strike may indicate discrimination, if the state uses it only to eliminate jurors of a particular cognizable group." *State v. Murphy*, 91 Ohio St.3d 516, 529 (2001). "A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *Pickens* at ¶ 64.

{¶13} Mr. Walton-Kirkendoll objected to the State's use of a preemptory challenge on the prospective juror, noting that she would have been the only African-American on the jury. In response, one of the prosecutors told the court that, because the juror had not been asked any questions, they did not know much about her. The prosecutor also said that the juror had not been very attentive during the questioning and had asked "[w]hy do I have to be here?" The prosecutor also said that the State's initial plan had been to waive its challenges, so that it would

not get to the people who had not been asked questions. After additional conversation about the issue, the other prosecutor told the court that, when he attempted to make eye contact with the juror, he "got the impression that she was very hostile to the State and hostile to my questioning." After Mr. Walton-Kirkendoll complained that the State's reasons had changed, the male prosecutor said that the reason for striking the juror "is because of * * * her mannerisms and the way she acted, the way she responded to questions – even though she didn't respond to any questions, that could be a reason in and of itself." After additional discussions, the female prosecutor again explained that she was attempting to avoid going deep into the jury pool because "the higher the number gets after 13, the less active these individuals are[.]" She also explained that the African-American prospective juror was the first of a set of jurors who had not spoken and that the subsequent juror had been attentive and "seems like a nice older lady." Finally, the male prosecutor told the court that, the fact that the African-American prospective juror did not "volunteer any information is another reason why we've decided to exercise our strike on this juror." Following the discussion, the trial court found that the prosecutors had offered a neutral explanation for the dismissal of the juror, which it found credible.

{¶14} The United States Supreme Court has explained that the racially neutral explanation that the prosecution is required to provide at the second step of the analysis "means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). This Court has also recognized that, "[u]nlike challenges for cause, a peremptory challenge may be exercised for *any* racially-neutral reason." (Emphasis sic.) *State v. Moss*, 9th Dist. Summit No. 24511, 2009-Ohio-3866, ¶ 12.

**{¶15}** Although the prosecutors gave varied reasons for its use of a peremptory strike on the African-American juror, there was no discriminatory intent inherent in any of their explanations. Accordingly, we conclude that the State satisfied its obligation to provide a "racially neutral explanation for the challenge" under the second step of the *Batson* analysis. *Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 106. Mr. Walton-Kirkendoll has not argued that the trial court clearly erred when it found the prosecution's explanation credible. We, therefore, cannot say that the trial court erred when it allowed the State to strike the prospective juror. Mr. Walton-Kirkendoll's second assignment of error is overruled.

## III.

**{¶16}** Mr. Walton-Kirkendoll's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                                         _____

                                                         JENNIFER HENSAL
                                                         FOR THE COURT

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

MOORE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

PATRICK M. HAKOS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.