[Cite as *State v. Seibert*, 2017-Ohio-9080.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 16AP0070 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DREW SEIBERT | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2016 CR-B 000620 |

DECISION AND JOURNAL ENTRY

Dated: December 18, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Drew Seibert, appeals from his conviction in the Wayne County Municipal Court. This Court affirms.

I.

{¶2} On April 12, 2016, the victim in this matter, Seibert's neighbor, secured an ex parte civil stalking protection order against him. The order required Seibert to stay at least 500 feet away from the victim, but, ten days after its issuance, the victim and her father saw Seibert enter his apartment. Because his apartment was located directly beneath her own, the victim then called the police to report that Seibert had violated the outstanding protection order.

{¶3} As a result of the foregoing incident, Seibert was charged with violating a protection order. A bench trial took place, following which the court found him guilty. The court sentenced him to 180 days in jail and a fine.

{¶4}   Seibert now appeals from his conviction and raises one assignment of error for our review.

## II.

### Assignment of Error

**The trial court's finding of guilt was not supported by sufficient evidence and was against the manifest weight of the evidence.**

{¶5}   In his sole assignment of error, Seibert argues that his conviction is based on insufficient evidence and is against the manifest weight of the evidence. We address each argument in turn.

**Sufficiency**

{¶6}   A sufficiency challenge of a criminal conviction presents a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

{¶7}   "No person shall recklessly violate the terms of * * * [a] protection order issued pursuant to [R.C.] 2151.34, 2903.213, or 2903.214 * * *." Former R.C. 2919.27(A)(2). "A person acts recklessly when, with heedless indifference to the consequences, [he] disregards a

substantial and unjustifiable risk that [his] conduct is likely to cause a certain result or is likely to be of a certain nature."  R.C. 2901.22(C).

{¶8}  The victim testified that she lived in an apartment building and Seibert lived in the apartment directly below hers.  Following a pattern of distressing conduct, she filed for a civil stalking protection order against him.  An ex parte order was issued on April 12, 2016, and, ten days later, the victim and Seibert appeared before the court for a hearing.  The victim testified that, after the hearing, she waited several hours before returning home, thinking that she would give Seibert a chance to collect any personal effects he might need from his apartment.  She stated that she arrived home around 1:00 p.m. and that her father came over to visit.  At about 2:30 p.m., she and her father were sitting by her living room window when they saw a car pull up outside.  As they watched, Seibert and his parents exited the car, and Seibert entered his downstairs apartment.  The victim confirmed that she had a clear view outside and saw Seibert, his father, and his mother arrive.  She also confirmed that she heard Seibert speaking with his mother once he entered his apartment.  At that point, the victim called the police because Seibert was well within 500 feet of her.

{¶9}  The victim's father also testified at trial.  He confirmed that, while he was visiting with his daughter on April 22nd, he saw Seibert arrive along with his parents.  He testified that he had no difficulty recognizing Seibert and that he watched as Seibert walked into his downstairs apartment. The victim's father estimated that Seibert was situated about 20 to 25 feet away from him and his daughter when they first saw him.  According to the victim's father, the victim was stunned when she saw Seibert.

{¶10}  Officer Christopher Grabowski responded to the victim's apartment after she called the police.  He testified that he went to Seibert's apartment once he arrived on scene and

that Seibert's mother was present. Seibert's mother denied that Seibert was at the apartment, but allowed Officer Grabowski to conduct a brief search. The officer confirmed that he did not find Seibert at the apartment. He stated, however, that the apartment had more than one point of entry such that one could exit to the back. Moreover, the victim testified that she and her father heard Seibert leave before the police arrived.

{¶11} The State also introduced into evidence a copy of the ex parte protection order that was issued against Seibert on April 12, 2016, and a copy of a transcript from a brief hearing that occurred ten days later. The ex parte protection order forbade Seibert from being within 500 feet of the victim. At the April 22nd hearing, Seibert acknowledged that he had received a copy of the order. Yet, he claimed not to know that the order would require him to move from his apartment. Seibert cast the allegations against him as false and accused the victim of "putting [him] on the streets" for conduct that had yet to be proven. Meanwhile, his mother repeatedly interjected that Seibert would continue to live at the apartment because the victim was lying. The transcript of the hearing reflects that the court repeatedly cautioned Seibert not to go within 500 feet of the victim and informed him that he could be arrested if he did so.

{¶12} Seibert does not dispute that there was an outstanding ex parte civil protection order against him on April 22nd. Likewise, he does not dispute that he received service of the order. He argues that his conviction is based on insufficient evidence because Officer Grabowski did not find him in his apartment on April 22nd and the victim and her father gave conflicting testimony. As to the latter point, he notes that the victim thought he might have been wearing a hat when she saw him, but her father never saw a hat. He argues that there was a "complete lack of evidence regarding [his] actual appearance at the [apartment]."

{¶13} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt that Seibert violated an outstanding protection order. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The victim and her father specifically testified that they saw Seibert arrive with both of his parents and walk into his apartment on April 22nd. There was evidence that, at that point, an ex parte civil stalking protection order had been issued and it required Seibert to stay more than 500 feet away from the victim. Moreover, there was evidence that Seibert had received the order and had been specifically cautioned regarding its 500-foot provision. Both the victim and her father indicated that Seibert lived directly below the victim such that, when he walked into his apartment, he was well within 500 feet of her. Accordingly, the record reflects that the State satisfied its burden of production. *See State v. Kuruc*, 9th Dist. Medina No. 15CA0088-M, 2017-Ohio-4112, ¶ 35 (sufficiency only tests the burden of production, not the persuasiveness of the evidence). Seibert's argument that his conviction is based on insufficient evidence lacks merit.

**Manifest Weight**

{¶14} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins*, 78 Ohio St.3d at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶

32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

**{¶15}** In his defense, Seibert presented the testimony of his father. His father testified that, on April 22nd, he went to Seibert's apartment along with his ex-wife, Seibert's mother. According to Seibert's father, before driving to the apartment, he dropped off Seibert at a parking lot that was located more than 500 feet from the apartment. He stated that, when he finished collecting his son's personal effects, he left the apartment and picked up his son. He denied that Seibert was present at the apartment that day. On cross-examination, however, he acknowledged that he had previously lied to police officers about his son's whereabouts when they were attempting to find him.

**{¶16}** Seibert's manifest weight argument largely mirrors his sufficiency argument. He argues that the trier of fact lost its way in convicting him because the evidence tended to show that he never entered his apartment on April 22nd. He once again notes that Officer Grabowski did not find him when he searched the apartment and that the victim and her father gave conflicting testimony with regard to his appearance.

**{¶17}** Having reviewed the record, this Court cannot conclude that the trier of fact clearly lost its way when it found Seibert guilty of violating a protection order. Both the victim and her father testified that they easily recognized Seibert and saw him walk into his apartment on the afternoon of April 22nd, after the ex parte order had been issued. Although both the victim and her father acknowledged that Seibert and his father resembled one another, they both confirmed that Seibert was present that day. They also both testified that Seibert's father and mother were with him at the apartment. While Seibert's father testified to the contrary, the trier of fact was "in the best position to determine the credibility of witnesses and evaluate their

testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Seibert has not shown that this is the exceptional case where the evidence weighs heavily against his conviction. Accordingly, his sole assignment of error is overruled.

III.

{¶18} Seibert's assignment of error is overruled. The judgment of the Wayne Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

JENNIFER A. ROBERTS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.