[Cite as *State v. Seidowsky*, 2019-Ohio-2610.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 18CA0059-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSEPH M. SEIDOWSKY | | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 18CRB00096 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2019

SCHAFER, Judge.

{¶1} Defendant-Appellant, Joseph Seidowsky, appeals from his convictions in the Wadsworth Municipal Court. This Court affirms.

I.

{¶2} One afternoon, Seidowsky entered the Target in Wadsworth and drew the attention of the store's asset protection team leader. The team leader followed Seidowsky to the electronics department and watched as he took two DVDs from the shelves and used a pair of scissors to cut a prepaid cell phone from its locked peg hook. The team leader then returned to his office and called the police while monitoring Seidowsky on video surveillance.

{¶3} Once Seidowsky exited the store without paying for the items from the electronics department, two officers stopped him. The officers decided to handcuff Seidowsky for officer safety, but he repeatedly interfered with their attempts to secure his arms. Eventually, one of the officers was forced to execute a knee strike in order to subdue him. Once they finally

handcuffed him and lowered him to the ground, two DVDs and a prepaid cell phone fell from his clothing. Inside one of his pockets, the officers also discovered a small pair of scissors.

{¶4} As a result of the foregoing incident, Seidowsky was charged with theft, possession of criminal tools, and resisting arrest. A jury trial ensued, at the conclusion of which the jury found him guilty on all three counts. The court sentenced him to a total of 110 days in jail.

{¶5} Seidowsky now appeals from his convictions, raising two assignments of error for review.

## II.

### Assignment of Error I

**Seidowsky's convictions for theft, criminal tools, and resisting arrest were based on insufficient evidence as a matter of law, and the Court erred by denying Seidowsky's Crim.R. 29 Motion.**

{¶6} In his first assignment of error, Seidowsky argues that his convictions are based on insufficient evidence. We disagree.

{¶7} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve

evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶8} A person is guilty of theft if he, "with purpose to deprive [an] owner of property[,] * * * knowingly obtain[s] or exert[s] control over [] the property * * * [w]ithout the consent of the owner * * *." R.C. 2913.02(A)(1). A person is guilty of possessing criminal tools if he "possess[es] or [has] under [his] control any * * * device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A). Finally, a person is guilty of resisting arrest if he, "recklessly or by force, [] resist[s] or interfere[s] with [his] lawful arrest * * *." R.C. 2921.33(A).

{¶9} S.G. testified that he is the asset protection team leader at the Target in Wadsworth. It is his job to identify suspicious behavior that he has learned to associate with theft and to prevent thefts from occurring. To do so, he conducts both physical surveillance and live video surveillance of the store. He testified that Target has numerous cameras positioned throughout its store and those cameras are linked to the monitors in his office.

{¶10} S.G. testified that Seidowsky aroused his suspicions as soon as he entered the store because he was walking at a fast pace, did not get a cart, and proceeded directly to the electronics department. S.G. identified the electronics department as a high theft area and testified that he decided to follow Seidowsky on foot to watch him. As he watched, he saw Seidowsky select two DVDs before walking over to the prepaid phone section. S.G. explained that the store's prepaid phones hang from boxes on a wall and the store secures them with locking peg hooks and "spider wrap." Spider wrap consists of metal wires that encase the phone. The wires are linked to a loud alarm that is meant to activate if the spider wrap is removed

incorrectly. Ordinarily, to purchase a prepaid phone, a customer must ask a store employee to unlock its peg hook, pay for the phone at the register, and wait for the cashier to remove the spider wrap. S.G. testified, however, that it is possible to pull off spider wrap without activating the alarm. He also testified that it is possible to remove a box from the prepaid phone wall by cutting it from its hook.

{¶11} S.G. stated that he watched Seidowsky play with one of the prepaid phones before removing some type of cutting device from his pocket and using it to cut the phone from its peg hook. Once Seidowsky did so, he walked over to the toy department, and S.G. returned to his office to call the police. S.G. lost sight of Seidowsky as he walked to his office, but used the surveillance cameras to track him once he arrived there. As he spoke with the police, he continued to monitor Seidowsky via the cameras. He watched Seidowsky walk to a different section of the store, select some paper plates, pay for the plates, and leave the store.

{¶12} Officer Tim Reed and Sergeant Michael Patterson were dispatched to Target as a result of S.G.'s call. Both officers testified that they remained outside when they arrived, covering separate doors and waiting for Seidowsky to exit the store. Seidowsky exited nearest Sergeant Patterson, so the sergeant approached him first and asked to speak with him. Sergeant Patterson testified that, as soon as he asked Seidowsky whether he was carrying a knife, Seidowsky became angry and began raising his voice. Officer Reed then arrived, and he too noted that Seidowsky was angry, sounded aggressive, and was not listening to Sergeant Patterson. Because they had reason to believe that Seidowsky had stolen items from the store and had some type of cutting device in his possession, the officers decided to handcuff him for officer safety.

{¶13} Both officers testified that Seidowsky resisted as they attempted to handcuff him. They both stated that Seidowsky became rigid, kept pulling away, and refused to put his arms behind his back despite numerous commands for him to do so. They also testified that one of his hands kept drifting near his waistband, a safety concern to them both due to the possibility of a weapon. The officers stated that they were unable to secure Seidowsky until Officer Reed executed a knee strike. Seidowsky then stopped resisting long enough for them to handcuff him.

{¶14} Officer Reed testified that, once they had Seidowsky in handcuffs, he began shaking violently, so they helped him to the ground and called for an ambulance. As the officers lowered Seidowsky to the ground, two DVDs and a prepaid cell phone box fell from his clothing. There was no spider wrap on the cell phone box, and S.G. identified the DVDs and cell phone as the items he saw Seidowsky take from the store. Before the paramedics arrived, Officer Reed and Sergeant Patterson searched Seidowsky for any sharp items. Inside one of his pockets, they discovered a small pair of scissors.

{¶15} Seidowsky argues that each of his convictions are based on insufficient evidence. As to his theft conviction, he notes that S.G. never saw him remove the spider wrap from the prepaid phone or conceal the items he allegedly stole. Although two DVDs and a cell phone fell from his clothing when the police arrested him, he argues that it is unclear from the record whether he had those items with him when he entered the store. Because the State failed to set forth any direct evidence that he stole the items, he argues that his theft conviction cannot stand. Likewise, because the State failed to prove that a theft occurred, he argues that there was no evidence he had scissors in his possession for a criminal purpose.

{¶16} As to his conviction for resisting arrest, Seidowsky argues that there was no evidence he recklessly disobeyed the commands of the officers who confronted him. He asserts

that his failure to comply was the result of a medical condition (i.e., a seizure), not a volitional act. Because his actions were strictly the result of a health emergency, he argues that his conviction for resisting arrest is based on insufficient evidence.

{¶17} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the State proved, beyond a reasonable doubt, that Seidowsky committed the crimes of theft, possessing criminal tools, and resisting arrest. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. S.G. saw Seidowsky pick up two DVDs and use a cutting device to remove a cell phone box from the store's prepaid phone wall. He identified the two DVDs and cell phone box that fell from Seidowsky's clothes as the ones taken from the store. Although he never saw Seidowsky conceal those items in his clothing, the jury reasonably could have inferred that he did so at some point before leaving the store. *See id.* at paragraph one of the syllabus ("Circumstantial evidence and direct evidence inherently possess the same probative value * * *."). Further, because officers found a pair of scissors in Seidowsky's pocket, the jury reasonably could have inferred that he used the scissors to cut the prepaid cell phone box from its peg hook. Upon review, Seidowsky has not shown that his convictions for theft and possessing criminal tools are based on insufficient evidence.

{¶18} As to Seidowsky's conviction for resisting arrest, the jury heard testimony that he repeatedly ignored the commands of two officers, pulled away from them, and refused to place his hands behind his back as they attempted to handcuff him. Both officers testified that Seidowsky started violently shaking *after* they had secured him in the handcuffs. They both described him as uncooperative, angry, and uncompliant. Based on their testimony, the jury reasonably could have concluded that Seidowsky interfered with his lawful arrest either by force or in a reckless manner. *See* R.C. 2921.33. Accordingly, we reject his argument that his

convictions are based on insufficient evidence. Seidowsky's first assignment of error is overruled.

## Assignment of Error II

**Seidowsky's convictions for theft, criminal tools and resisting arrest were against the manifest weight of the evidence in violation of the due process clause of the Constitution (Clause XIV, Section 1, United States Constitution).**

{¶19} In his second assignment of error, Seidowsky argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶20} When considering an argument that a criminal conviction is against the manifest weight standard, this Court is required to

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins*, 78 Ohio St.3d at 387.

{¶21} Seidowsky argues that the jury lost its way when it convicted him because no one saw him remove the spider wrap from the prepaid cell phone box or conceal the phone or DVDs before leaving the store. Further, he argues the jury lost its way when it convicted him of resisting arrest, as his actions were strictly the result of a medical condition.

{¶22} Having reviewed the record, we cannot conclude that the jury lost its way when it determined that Seidowsky committed the crimes of theft, possessing criminal tools, and resisting arrest. Seidowsky did not testify at trial, but the jury heard testimony that he became

angry and uncooperative when confronted by Officer Reed and Sergeant Patterson. They heard testimony that he actively resisted the officers, ignored their commands, forced them to apply a measure of physical force, and only experienced an apparent medical issue after he was handcuffed. The jury heard testimony that Seidowsky took DVDs from the shelves inside the store and cut a prepaid cell phone from the store's wall. S.G. specifically identified the items that fell from Seidowsky's clothing, none of which had been paid for at the register, as the items he took from the store. Although he never saw Seidowsky conceal those items, the jury reasonably could have concluded that Seidowsky did so at some point before he left the store. Seidowsky has not shown that this is the exceptional case where the jury lost its way by convicting him. *See Otten* at 340. We, therefore, reject his argument that his conviction is against the manifest weight of the evidence. Seidowsky's second assignment of error is overruled.

## III.

{¶23} Seidowsky's assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DAVID V. GEDROCK, Attorney at Law, for Appellant.

THOMAS J. MORRIS, Director of Law, for Appellee.